REVENUE CABINET, COMMON-
WEALTH OF KENTUCKY; Wendell
Groce, Auditor for the Revenue Cabi-
net; and C. Emmett Calvert, Secretary
of the Revenue Cabinet, Movants,

v.

Wendell CHERRY and Dorothy M.
Cherry, Respondents.

No. 90–SC–131–I.

Supreme Court of Kentucky.

Nov. 8, 1990.

Douglas W. Dowell, Legal Services Sec-
tion, Revenue Cabinet, Frankfort, for mov-
ants.

James E. Milliman, A. Robert Doll, Mar-
garet E. Keane, Holland N. McTyeire, V,
Greenebaum, Doll & McDonald, Louisville,
for respondents.

## OPINION AND ORDER OF THE COURT

On October 20, 1989, Wendell Groce, Au-
ditor, employed by the Revenue Cabinet,
issued a document styled "Administrative
Summons" commanding the taxpayers,
Wendell and Dorothy Cherry, to produce
(inter alia):

> "[A]ll purchase invoices for art, antiques,
> furniture, and any other purchase of
> tangible personal property from 1–1–79
> through current date."

Among other things, this so-called "Ad-
ministrative Summons" also called for
"Tax Returns for 1979, 1980 and 1988,"
"insurance contracts to insure Fine Art 1–
1–79 through current date," "cancelled
checks on all bank accounts, Bank draft
records from 1–1–79 to current date," "De-
tail of sales of Fine Art and Antiques 1–1–
79 through current date," and various bank
financing agreements related thereto.

The taxpayers thought this demand op-
pressive. Instead of responding to this
Administrative Summons, on November 3,
1989, they filed a Complaint in Jefferson
Circuit Court attacking this procedure and
seeking to have declared unconstitutional
the Revenue Cabinet's attempt to assess
and collect sales and use taxes from the
Cherrys on various grounds. Their com-
plaint attacked the tax collection effort as
unconstitutionally selective and discrimina-
tory, and arbitrary, and challenged the use
of the Administrative Summons.

As part of their lawsuit the Cherrys sought a Protective Order in Jefferson Circuit Court. The trial court granted the Protective Order, stating that "the Administrative Summons is hereby quashed; . . ." The Protective Order also stated the Revenue Cabinet "shall be prohibited from conducting discovery pending a resolution of the Cherrys' claims in this matter; and . . . this Order limiting discovery herein shall remain in full force and effect until further order of this Court."

Revenue Cabinet then filed a CR 65.07 Motion in the Court of Appeals seeking to have this Protective Order dissolved. The Court of Appeals denied the motion stating this rule is available only to attack a "temporary injunction" issued in a trial court, and holding the trial court's Order cannot be so classified.

■ Revenue Cabinet then filed this CR 65.09 Motion seeking relief in the Supreme Court. CR 65.09 states, "[s]uch a motion will be entertained only for extraordinary cause shown in the motion." The essence of the Revenue Cabinet's claim of "extraordinary cause" is its interpretation of the trial court's "Protective Order" as in fact a "temporary injunction" that prevents Revenue Cabinet from proceeding with its efforts at taxpayers audit and assessment until the constitutional challenges raised in the initial Complaint filed in Jefferson Circuit Court have been finally determined.

If indeed the effect of this Protective Order was to terminate any further efforts to audit the taxpayers' personal property, there would be some justification in Revenue Cabinet's position. However, if up to now this has not been clear, such is no longer the case. At oral argument counsel for the taxpayers freely conceded that Revenue Cabinet retains the right to audit the taxpayers' personal property and personal property records for sales and use tax purposes. Counsel states the taxpayers' motion in the trial court was *not* to block the right to audit, and that the trial court's Protective Order does not have this effect. Counsel for the taxpayers stated that Revenue Cabinet retains the continuing right to go back into the trial court for orders compelling production of documents as necessary for an audit while their constitutional claims are pending. Cherry's counsel states that the taxpayers claimed, sought and obtained, only the right to require Revenue Cabinet to seek discovery by court orders in the pending case, rather than to compel discovery by administrative summons without benefit of court order.

The taxpayers have stated in this Court that the issue here is not the right of the Revenue Cabinet to get orders appropriate to an audit from the trial court, but only the taxpayers' right to require Revenue Cabinet to seek a court order rather than proceeding by administrative summons, thus providing the taxpayers with an opportunity to be heard in court where they can contest the breadth and burdensomeness of the orders, where such orders can be confined by a rule of reasonableness. We conclude that, given this understanding of the trial court's Protective Order, this case does not present a situation where CR 65.09 applies.

■ Both sides agree that the power of Revenue Cabinet to compel the taxpayers to produce materials for purposes of audit derives from KRS 131.130(2), which states:

> "The cabinet, by representatives appointed by it in writing, may take testimony or depositions, and may examine the records, documents, files and equipment of any taxpayer or of any person whose records, documents or equipment will furnish knowledge concerning the tax liability of any taxpayer, when it deems this reasonably necessary for purposes incident to the performance of its functions. The cabinet may *enforce this right by application to the circuit court* in the county wherein the person is domiciled or has his principal office, or by application to the Franklin Circuit Court, which courts may compel compliance with the orders of the cabinet." [Emphasis added.]

Clearly the statute gives Revenue Cabinet no independent power to either summons or subpoena the taxpayers records. The administrative summons is nothing more than a request, lacking the force of

law. The statute provides that, if the taxpayer does not comply with Revenue Cabinet's requests, the "cabinet may enforce this right by application to the circuit court ... which courts may compel compliance with the orders of the cabinet."

The Order of the trial court does not transgress this statutory authority, because the trial court remains open to Revenue Cabinet's application for an Order to compel compliance pursuant to KRS 131.-130(2). The only limiting effect on Revenue Cabinet's right to pursue an audit which is claimed by the taxpayer, is that Revenue Cabinet must pursue the authority and remedy granted under KRS 131.130 in the Jefferson Circuit Court action, rather than having the option to proceed independently in Franklin Circuit Court. In support of this position the taxpayers rely on this statement in *Commonwealth v. American Creosoting Co.*, 296 Ky. 858, 178 S.W.2d 988 (1944):

> "When an assessment has become the subject of litigation in a circuit court, there is no need for such an act. The Civil Code of Practice provides an ample remedy. A subpoena duces tecum can be obtained from the court where the action is pending, and the books and records, which appellant in the present action seeks to compel the appellee to produce, can be examined. Undoubtedly, the court would afford the applicant for the writ ample opportunity to examine the documents produced, and an orderly procedure, as contemplated by the Civil Code of Practice, would result. KRS 131.130 was not intended as a substitute for ... the Civil Code of Practice."

This case comes to us in the form of a CR 65.09 Motion where relief is only justified in circumstances of an "extraordinary" nature. It is sufficient for our purposes of deciding this case that we consider only whether limiting further discovery for audit purposes to Jefferson Circuit Court action only, rather than either Jefferson or Fayette Circuit Court, presents circumstances of an extraordinary nature justifying CR 65.09 relief. Quite obviously, this is not a situation where such relief is necessary or appropriate.

Therefore, the Motion is denied.

STEPHENS, C.J., and GANT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., concurs in results only.

COMBS, J., dissents by separate opinion in which LAMBERT and VANCE, JJ., join.

ENTERED: November 8, 1990.

(s) Robert F. Stephens
CHIEF JUSTICE

COMBS, Justice, dissenting.

I respectfully disagree with my brethren. KRS 139.760(3) is clear and unequivocal. The General Assembly has said:

> No suit shall be maintained *in any court* to restrain or delay the collection or payment of any taxes levied by this chapter. [Emphasis added.]

Despite this express proscription, the circuit court's so-called "protective order" purports to delay the assessment, and perforce the collection and payment, of taxes levied under Chapter 139.

The suit having been filed in direct contravention of the statute, the Jefferson Circuit Court lacked jurisdiction, and its orders are, in my opinion, void and of no effect.

The majority opinion permits any taxpayer in this state to file a similar action in his/her home county when being audited. The Cabinet lacks the personnel to resist these claims. The Commonwealth will soon feel the cramp in its collection efforts.

The action of the Secretary in issuing the summons and/or subpoena duces tecum may or may not have been oppressive. Respondent has an adequate remedy provided by the statute through the agency and then to the tax court, as well as the opportunity to *resist* the agency's enforcement action in circuit court.

I am not impressed by the "concessions" of respondents' counsel at oral argument. I am sure they meant what they said, but who is to prevent the Cherrys from dis-

charging them and taking the position that nothing could be done pending the final resolution of the matter in the circuit court?

The wisdom of the statutory prohibition is not hard to fathom. It simply says to the taxpayer, when you are being audited you can do nothing in any other court. Your remedies are within the agency itself, and the tax court; and *then* judicial review.

LAMBERT and VANCE, JJ., join in this dissenting opinion.